IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

CHERYL L. TYSON,

                    Plaintiff,                              8:13-CV-29

vs.

                                                   MEMORANDUM AND ORDER
CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

                    Defendant.

        This matter is before the Court on plaintiff Cheryl L. Tyson's appeal
from the decision of the Commissioner of the Social Security Administration
which awarded her disability insurance benefits under Title XVI of the Social
Security Act, 42 U.S.C. § 1381 *et seq*., effective July 1, 2011. Tyson is seeking
past-due benefits. The Court has considered the parties' filings and the
administrative record, and will reverse the Commissioner's decision and
remand this case for calculation and award of past-due benefits.

BACKGROUND

        Tyson applied for Supplemental Security Income benefits in June 2009.
T305. Her claim was denied initially and on reconsideration, and by an
administrative law judge (ALJ). T136-52, 166-76. But the Appeals Council of
the Social Security Administration was presented with new and material
evidence, and found that the ALJ had overlooked certain evidence and made
factual errors. T162-64. So, the Appeals Council remanded the case to the
ALJ, and after remand, the ALJ found that Tyson was disabled and entitled
to benefits. T11-34.

        To determine whether a claimant is entitled to disability benefits, the
ALJ performs a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). At
step one, the claimant has the burden to establish that she has not engaged
in substantial gainful activity since her alleged disability onset date. *Id.*;
*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006). If the claimant has
engaged in substantial gainful activity, she will be found not to be disabled;
otherwise, at step two, she has the burden to prove she has a medically
determinable physical or mental impairment or combination of impairments
that significantly limits her physical or mental ability to perform basic work

activities. *Id.* At step three, if the claimant shows that her impairment meets or equals a presumptively disabling impairment listed in the regulations, she is automatically found disabled and is entitled to benefits. *Id.* Otherwise, the analysis proceeds to step four, but first, the ALJ must determine the claimant's residual functional capacity (RFC), which is used at steps four and five. 20 C.F.R. § 404.1520(a)(4). At step four, the claimant has the burden to prove she lacks the RFC to perform her past relevant work. *Id.*; *Gonzales*, 465 F.3d at 894. If the claimant can still do her past relevant work, she will be found not to be disabled; otherwise, at step five, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and work experience, that there are other jobs in the national economy the claimant can perform. *Id.*

In this case, at step one, the ALJ found that Tyson had not engaged in substantial gainful activity since her alleged disability onset date of June 24, 2009. T14. At step two, the ALJ found that Tyson had the following severe impairments as of her alleged onset date: alcohol dependence; low back pain/sciatica and asthma, major depressive disorder, bipolar disorder, and anxiety disorder. T15. The ALJ found that Tyson's alcohol dependence stopped being severe as of August 25, 2010. T15. And the ALJ found that beginning on July 1, 2011, Tyson also had an unspecified cognitive disorder that constituted a severe impairment. T15. At step three, the ALJ found that none of Tyson's impairments met or equaled a presumptively disabling impairment. T15, 25.

In determining Tyson's RFC, and at steps four and five, the ALJ differentiated between Tyson's condition before and after she stopped drinking alcohol. T25. The ALJ found that Tyson's alcohol abuse was material until August 24, 2010—meaning that although she was disabled during that time, she would not have been disabled if she had not been drinking. T18-23. And the ALJ found that as of July 1, 2011, Tyson's mental condition had deteriorated to the point that her RFC included, among other things, an inability to maintain attention, concentration, persistence, and pace over the course of an 8-hour day and 40-hour workweek or equivalent schedule. T31. That limitation meant that she could perform neither her past relevant work nor any other jobs that exist in significant numbers in the national economy. T31-34.

But for the period between August 24, 2010 and July 1, 2011, the ALJ found that Tyson was capable of routine, repetitive, unskilled work that did not require maintenance of attention or concentration for extended periods; was able to perform work that did not require more than occasional (not constant or intense) interaction with coworkers, supervisors, or the general public; and was able to work in an environment free from concentrated

exposure to fumes, dust, odors, gases, or other known respiratory irritants. T26. But she was still capable of maintaining attention, concentration, persistence, and pace over the course of a workday and workweek, so she could still perform her past relevant work, and could perform other jobs that exist in significant numbers in the national economy. T29-31.

So, the ALJ found that Tyson was disabled, but only beginning on July 1, 2011. T34. The Appeals Council denied Tyson's request for review. T1-3. Tyson's complaint seeks review of the ALJ's decision as the final decision of the Commissioner under sentence four of 42 U.S.C. § 405(g). Filing 1.

## STANDARD OF REVIEW

The Court reviews a denial of benefits by the Commissioner to determine whether the denial is supported by substantial evidence on the record as a whole. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011) (citing 42 U.S.C. § 405(g)). Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion. *Id*. The Court must consider evidence that both supports and detracts from the ALJ's decision, and will not reverse an administrative decision simply because some evidence may support the opposite conclusion. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). If, after reviewing the record, the Court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the Court must affirm the ALJ's decision. *Id*. The Court reviews for substance over form: an arguable deficiency in opinion-writing technique does not require the Court to set aside an administrative finding when that deficiency had no bearing on the outcome. *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011). And the Court defers to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011).

## ANALYSIS

The issues in this case are relatively narrow. Tyson does not dispute that she was not disabled before June 24, 2009. The Commissioner does not dispute that Tyson was disabled as of July 1, 2011. And it is uncontested that Tyson stopped abusing alcohol as of August 24, 2010.[1] So, the question is whether there is substantial evidence in the record to support the ALJ's findings that (1) Tyson's alcohol abuse was material to her disability between June 24, 2009 and August 24, 2010; and (2) Tyson's cognitive decline did not

---

[1] There was at least one instance of relapse in 2012, but because it was after the disability onset date found by the ALJ, it is not important to the Court's disposition.

disable her until July 1, 2011. That will be easier to answer, however, starting with the date of disability.

DATE OF DISABILITY

Tyson's claim depends on the opinion of Tenycia Shepherd, M.D., her treating psychiatrist. Shepherd began treating Tyson on June 2, 2009, when Tyson presented at the Douglas County Community Mental Health Center (Douglas County) with what Shepherd identified as major depressive disorder and alcohol dependence. T541-44. Shepherd continued to treat Tyson regularly and, on July 22, 2011, opined that Tyson had moderate or marked limitations in nearly every aspect of daily living activities and social functioning, and marked to extreme limitations in every aspect of maintaining concentration, persistence, or pace. T902-07. Most pertinently, Shepherd opined that Tyson's condition had reached that level of severity as of June 2, 2009. T909. Shepherd also explained that Tyson's ability to make occupational adjustments ranged from fair to poor; her ability to understand, remember, and carry out simple job instructions was poor; and that she had no ability to understand, remember, and carry out complex or detailed job instructions. T910-11. Shepherd later clarified that in her opinion, Tyson's symptoms would have been the same regardless of whether Tyson used alcohol or drugs. T1067.

In evaluating Shepherd's opinion, it is important to remain mindful of the fact that Shepherd is Tyson's treating psychiatrist and is, therefore, a treating medical source. *See* 20 C.F.R. § 404.1502. The opinion of a treating medical source is given more weight because that source is likely to be the medical professional most able to provide a detailed, longitudinal picture of the claimant's impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. 20 C.F.R. § 404.1527(c)(2). When the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. *See, id.*; *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).

Even if the treating source's opinion is not given controlling weight, an ALJ must apply certain factors—the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion. *See* 20 C.F.R. 404.1527(c)(2); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). And the

- 4 -

ALJ must *always* give good reasons for the weight given the treating source's opinion. 20 C.F.R. § 404.1527(c)(2); *see also Anderson*, 696 F.3d at 793. Pursuant to that provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 61 Fed. Reg. 34490-01, 34492 (July 2, 1996); *Wilson*, 378 F.3d at 544.

In this case, the ALJ concluded that "the record lacks support for the full degree of severity by [sic] which Dr. Shepherd described, especially when considering the added effects of substance abuse on [Tyson's] condition prior to August 25, 2010." T15. The ALJ explained that

> Dr. Shepherd's opinion is certainly not discounted altogether, though it is held in light of the degree by which it is borne by the evidence of record at different times and the clear effects of substance use, as were relevant to a finding of disability prior to August 2010. In short, her assessment—both with regards to the claimant meeting listing 12.04 and her function-by-function analysis . . . are [sic] given little weight prior to July 1, 2011. Not only is the claimant seen to have been moreso [sic] affected [sic] by the later development of cognitive decompensation, apparently not directly caused by alcoholism, but Dr. Shepherd's opinion was also first rendered in that month, when she acknowledged the claimant's cognitive disorder. Accordingly, Dr. Shepherd's opinion is afforded substantial weight as of the established onset date but is still unsupported in its entirety by evidence on record at that time, as well as that later received.

T16. The ALJ noted that before August 24, 2010, Tyson was medically treated almost exclusively for alcohol use. T22. And after August 24, the ALJ found, "although some evidence prior to July 1, 2011 suggests still further development of a cognitive process, the record is absent any definitive evidence of substantial, sustained cognitive decline and contains few incidences of other treatment." T28.

Accordingly, the ALJ afforded "little weight to the assessment of Dr. Shepherd" for the period between August 24, 2010 and July 1, 2011, instead crediting the opinion of two State agency psychological consultants and another, non-treating psychologist. T28. But "[b]eginning with July 2011, significant weight is warranted to be assigned to the assessment of Dr.

Shepherd, which is thereafter (but not before) supported by the evidence of record." T32. "It was that month[,]" the ALJ wrote, "where Dr. Shepherd first acknowledged and diagnosed [Tyson] to have a cognitive disorder, which was only referenced as a possibility previously—either in her records or those from other providers." T32.

But the ALJ's reasoning is not supported by the record in a number of respects. To begin with, the record provides more support for Shepherd's opinion than the ALJ's decision suggests.[2] The ALJ wrote that

> although some evidence prior to July 1, 2011 suggests still further development of a cognitive process, the record is absent any definitive evidence of substantial, sustained cognitive decline and contains few incidences of other treatment. Dr. Shepherd's records from April 2011 (her only note in 2011, prior to June) show that [Tyson] had spent the previous month in jail; nonetheless, she was described as "doing fair" with euthymic mood and full affect.
>
> In the absence of alcohol abuse, [Tyson]'s condition is seen to have been substantially improved prior to July 1, 2011; even her subjective complaints are not directive of disabling impairment during that time and were not as severe as alleged at the hearing. Excepting [Tyson]'s one emergency room visit (her only hospital contact since August 24, 2010), she is seen to have achieved a rather stable baseline of functioning over this eleven-month period, as evidenced by the stark contrast in earlier findings and observations by her treating providers as well as the fact that [Tyson] was not in need of emergency intervention, aggressive medical care or hospitalization of any kind. The distinct decrease in [Tyson]'s frequency of treatment and her noted medical compliance over the period of sobriety suggests not only that her symptoms had achieved appreciable control but that, in the absence of alcohol use, she lacked the severity of symptoms that would require greater than conservative treatment managed on an outpatient basis.

T28. But a person need not be "in need of emergency intervention, aggressive medical care or hospitalization" in order to be disabled within the meaning of

---

[2] Given Tyson's extensive history of medical treatment and substance abuse counseling and rehabilitation, the medical records provided to the Social Security Administration and the Court were voluminous. The Court has reviewed the entire record, but will discuss only the salient portions.

- 6 -

the Social Security Act. And, in fact, the medical records suggest an ongoing concern with Tyson's cognitive ability.

Tyson was admitted to residential substance abuse treatment at Catholic Charities on August, 24, 2010. T929. Although notes immediately following Tyson's date of sobriety were fairly positive, and focused more on her emotional condition, by November 17, Tyson's therapist at Catholic Charities, Elizabeth Shefter, LMHP, PLADC, observed that Tyson had been "experiencing tearfulness, confusion and forgetfulness and frequently feels disorganized and overwhelmed." T951. On December 1, Dan Brune, a nurse at Douglas County, noted Tyson's "poor focus," racing thoughts, and "word-finding difficulty" along with some mood irritability and "thought disturbances." T783. On December 15, Shefter noted Tyson's "continued difficulty procrastinating" about certain obligations and that Tyson "tends to become confused and agitated when any of these issues are discussed." T950. On December 29, Brune noted that Tyson's memory was "not so good" and that she was "still seeing shadows." T780.

On January 11, 2011, Tyson was asked to leave residential treatment for violating her behavior contract, and went to live with her father. T929. Shefter wrote that

> Tyson frequently complained of forgetfulness and said that she was not able to remember the daily schedule, to set up appointments or to call in her prescriptions when needed. She also frequently stated that she did not remember having been given a directive such as to complete an assignment or not put snacks in her room. She reported frequently feeling confused, and during therapy sessions she did have a tangential thought process and difficulty conveying information in a linear manner. Peers were also aware of her disorganization. During treatment we attempted to address this problem by helping her organize her papers and write down important information. This writer also spoke with her mental health provider at Douglas County so that this could be addressed following her discharge. No additional testing was completed during her treatment and it remained unclear how much of this problem was organic in nature, and how much could be addressed through insight and behavioral interventions.

T931. Shefter contacted Tyson's case worker at Douglas County to explain her concern with Tyson's cognitive functioning, and suggested neurological testing. T931. Shefter described Tyson's prognosis as guarded, explaining

that it was "unclear what portion of her difficulties are caused by cognitive deficits, and she may continue to struggle with her memory and organizational skills if this is a major factor." T932.

When Brune next saw Tyson, on January 18, 2011, he noted that Tyson's father, who was present, was concerned about Tyson's "functional decline." T835. Then, on February 4, Tyson was brought by friends to the Immanuel Medical Center emergency room suffering from severe confusion and hallucinations. T1053. Tyson was "hearing voices and seeing shadows" and could not tell the emergency room doctor where she was or what the date was. T1053. Tyson "thought that this was June and when asked if we would have this much snow in June she said, it's June." T1056.

Shepherd saw Tyson on February 14, 2011, and noted a need for "neuropsych testing for dementia vs. cognitive decline." T832. Shepherd noted Tyson's poor memory. T832. Shepherd saw Tyson again on April 11 and June 6, and on both occasions noted that Tyson still had memory difficulties. T825, 830. Tyson was also seen several times during that period at Douglas County by Barbara Bibins, M.S., LIMHP, LADC. Bibins' notes for January 24 include that Tyson "feels confused and forgets often." T834. On April 20, Bibins noted that Tyson was "still having memory problems." T829. On May 9, Tyson was depressed and crying and her memory was "poor," although she was "able to do some problem-solving in spite of memory problems." T828. On May 25, Bibins noted that Tyson was "overwhelmed" by a number of issues, including "worry about memory loss." T827. Bibins also observed that Tyson was "repeating stories and forgets topic while talking." T827. And on June 14, Bibins noted Tyson's "anxiety due to memory loss but significant decrease since last seen." T824. (Read in context, Bibins seems to have been saying that Tyson's anxiety had decreased, not that her memory had improved.)

In sum, the record does not support the ALJ's finding that it was "absent any definitive evidence of substantial, sustained cognitive decline and contains few incidences of other treatment." T28. The ALJ's reference to Shepherd's April 11, 2011 note omitted Shepherd's observation of Tyson's poor memory, and the ALJ's description of that note as being Shepherd's "only note in 2011, prior to June" suggests that the ALJ overlooked Shepherd's February 14 note, in which Shepherd indicated that "neuropsych testing for dementia vs. cognitive decline" was warranted. T28, 832. Nor does the record support the ALJ's conclusion that Tyson had "achieved a rather stable baseline of functioning" between August 2010 and July 2011. Tyson was, during that period, living in a residential substance abuse facility, then with her father, and then in a Salvation Army residential support program. T929, 1085. Tyson's ability to meet her medical appointments while living

with others in supportive environments was not indicative of an ability to maintain full-time employment.

But more to the point, it is important to remember that the issue before the Court is *not* whether the ALJ's factual finding is consistent with the evidence—it is, rather, whether Shepherd's opinion is inconsistent with the other substantial evidence in the record, because unless it is *inconsistent*, the ALJ was required to give Shepherd's opinion controlling weight. *See*, 20 C.F.R. § 404.1527(c)(2); *Anderson*, 696 F.3d at 793. It is permissible for an ALJ to discount an opinion of a treating source that is inconsistent with the source's clinical treatment notes. *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). But there is nothing inconsistent in this case; in fact, the record is wholly consistent with Shepherd's opinion, and that opinion was entitled to controlling weight—including the conclusion regarding *when* Tyson was disabled. A treating doctor's retrospective diagnosis is entitled to controlling weight if it is based upon a medically accepted clinical diagnostic technique, and is consistent with the record. *See Grebenick v. Chater*, 121 F.3d 1193, 1199 (8th Cir. 1997); *cf. Jones v. Chater*, 65 F.3d 102, 104 (8th Cir. 1995).

Instead, the ALJ credited the opinions of two State agency psychological consultants and another, non-treating psychologist. But to begin with, it does not appear that either of the State agency consultants actually examined Tyson, and the opinions of non-treating practitioners who have attempted to evaluate a claimant without examination do not normally constitute substantial evidence on the record as a whole upon which to base a denial of benefits. *Shontos v. Barnhart*, 328 F.3d 418, 425 (8th Cir. 2003). More importantly, however, all of those evaluations were performed *before* Tyson stopped abusing alcohol—none more recent than April 2010. T594, 702, 709. Those opinions will be discussed in a bit more detail below, but for now it suffices to observe that an opinion rendered in April 2010 provides little basis to discount a treating psychiatrist's opinion regarding her patient's condition between August 2010 and July 2011.

Nor is there a firm basis in the record for the ALJ's choice of July 1, 2011 as the onset date for Tyson's disability. There was no precipitating event to suggest that Tyson's impairments had increased. The ALJ wrote that Tyson "developed a cognitive disorder of apparent insidious nature, which manifested to result in substantial limitations as of July 1, 2011." T32. The ALJ found that in the 15 months *after* July 1, Tyson's condition had worsened and that those "reports serve to lend credibility to Dr. Shepherd's opinion not previously due, given the virtual absence of these added limitations being confirmed prior to July 2011." T32.

To be sure, there is evidence suggesting that Tyson's condition may have declined—most pertinently, Shepherd's later opinion to that effect. But

it is far from clear how subsequent evidence could validate Shepherd's July 2011 opinion when, according to the ALJ, the evidence preceding that opinion was inconsistent with it. And, in fact, the Court's review of the evidence reveals very little difference between the symptoms described before July 1 and after. As a result, there is no basis for crediting Shepherd's opinion starting July 1, but discrediting it before then.

The Court recognizes that an ALJ may discount or even disregard the opinion of a treating source where other medical assessments are supported by better or more thorough medical evidence. *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005). But that was not the case here. The ALJ may have been dissatisfied with the evidence in the record supporting Shepherd's opinion, but that is not the standard. Shepherd's opinion was, in fact, the only opinion in the record from a treating medical source, and it was entitled to controlling weight absent inconsistency with the medical evidence of record. *See, Tilley v. Astrue*, 580 F.3d 675, 680-81 (8th Cir. 2009); *Trossauer v. Chater*, 121 F.3d 341, 343-44 (8th Cir. 1997); *Ghant v. Bowen*, 930 F.2d 633, 639 (8th Cir. 1991). It is also important to note that the starting point in determining the date of onset of disability is the claimant's statement as to when the disability began. SSR 83-20, 1983 WL 31249, at *2 (1983). "In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available." *Id.*, at *3; *see Grebenick*, 121 F.3d at 1200. Shepherd's opinion—which was entitled to deference—supported Tyson's alleged date of onset of disability, which was also entitled to deference in the absence of inconsistent evidence. No such inconsistency was present.

MATERIALITY OF SUBSTANCE ABUSE

So, if July 1, 2011 was not the onset date for Tyson's disability, then what was? Shepherd opined that it was June 24, 2009, but the ALJ found that Tyson's substance abuse was a material cause of that disability until August 24, 2010. The ALJ's conclusion is better-supported on this point, but in the end, the problem is the same: there is insufficient evidence in the record to warrant setting aside the opinion of a treating medical source.

The ALJ's analysis was necessary because Congress has eliminated alcoholism or drug addiction as a basis for obtaining Social Security benefits. *Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010) (citing Pub. L. No. 104–121, 110 Stat. 852–56 (1996)); *see also, Vester v. Barnhart*, 416 F.3d 886, 888 (8th Cir. 2005); *Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003). An individual is not considered "disabled" for purposes of obtaining supplemental security income "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's

determination that the individual is disabled." 42 U.S.C. 1382c(a)(3)(J); *see also* 42 U.S.C. 423(d)(2)(C) (disability insurance benefits). The claimant has the burden to prove that alcoholism or drug addiction is not a contributing factor. *Kluesner*, 607 F.3d at 537; *see also, Vester*, 416 F.3d at 888; *Brueggemann*, 348 F.3d at 693; *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000). But, if the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow. *Kluesner*, 607 F.3d at 537; *Brueggemann*, 348 F.3d at 693. In colloquial terms, on the materiality of alcoholism, a tie goes to Tyson. *See Brueggemann*, 348 F.3d at 693; *see also Kluesner*, 607 F.3d at 537.

The key factor in determining whether drug addiction or alcoholism is material to a determination of disability is whether the claimant would still be found disabled if he or she stopped using drugs or alcohol. *Pettit*, 218 F.3d at 902. And in this case, Tyson met her burden of showing that her impairments would have been disabling, even in the absence of alcohol use, by presenting Shepherd's opinion to that effect. But the ALJ discounted that opinion, on two grounds. First, the ALJ credited the opinions of the two State agency psychological consultants and non-treating psychologist, as mentioned above. And, the ALJ noted, Tyson's condition improved when she abstained from alcohol for any length of time.

The first State agency consultant, Lee Branham, Ph.D., opined in August 2009 that Tyson was only moderately limited in certain aspects of her ability to maintain concentration and persistence. T594-96. But, Branham wrote, "her condition is currently at the markedly limiting level." T596 He expected that with substance abuse treatment, Tyson could "return to baseline or better functioning in less than 12 months." T596. Similarly, the other State agency consultant, Patricia Newman, Ph.D., opined in April 2010 that Tyson was only moderately limited, but that "in the past, alcohol use has interfered with understanding and memory during periods of intoxication." T709-11. Newman "expected that [Tyson] will continue to improve from her current status with continued treatment and abstinence from alcohol." T728. And Patricia Blake, Ph.D., opined in April 2010 (based on an evaluation performed on March 30) that Tyson had adequate attention and concentration needed for task completion, but that a "sustained period of sobriety will be necessary to determine the presence of any mental health diagnoses." T702-05.

And at the time, those observations made perfect sense. Tyson was drinking up to a pint of vodka a day, so it was reasonable to ascribe her limitations to alcohol use. As the saying goes, "when you hear hoofbeats, think horses, not zebras." But as the Eighth Circuit has recognized, "when

- 11 -

the claimant is actively abusing alcohol or drugs," determining which limitations would remain when the effects of the substance use disorders are absent "will necessarily be hypothetical and therefore more difficult than the same task when the claimant has stopped." *Brueggemann*, 348 F.3d at 694-95; *see also Kluesner*, 607 F.3d 537. "Determining whether a claimant would still be disabled if he or she stopped drinking is, of course, simpler if the claimant actually has stopped." *Pettit*, 218 F.3d at 903; *see also Vester*, 416 F.3d at 890. And "even if long-term alcohol abuse causes a disability, alcoholism will not be found 'material' to the finding of disability if the disability remains after the claimant stops drinking." *Id.* at 904.

In this case, Branham, Newman, and Blake did not have the benefit of observing Tyson during an extended period of sobriety for purposes of determining what impairments remained. Shepherd did. While an ALJ may, as previously noted, discount or even disregard the opinion of a treating source where other medical assessments are supported by better or more thorough medical evidence, that does not mean that an ALJ may discount or disregard a treating source's opinion on the basis of other medical assessments that are supported by inferior and less thorough medical evidence. *Cf. Reed*, 399 F.3d at 921.

Nor is it surprising—or particularly meaningful—that Tyson's impairments abated during her periods of sobriety. The Court accepts, as a general proposition, that a claimant's improved condition during periods of sobriety may be evidence supporting an ALJ's finding that the claimant's substance abuse is material to his or her disability. *E.g.*, *Vester*, 416 F.3d at 890. But it is also true that a claimant who is disabled by mental impairments is likely to be even more impaired while abusing alcohol. The fact that those impairments may subside somewhat when the claimant stops drinking does not mean that the claimant was not disabled in the first place. *Cf. Pettit*, 218 F.3d at 903. And while alcohol use was obviously a conflating factor, there are some noteworthy similarities between Tyson's symptoms before and after she stopped drinking. Confusion and forgetfulness were recurrent observations. T581, 624, 645, 665, 700, 863. And hospital admissions in September and October 2009 based on Tyson's confused mental state, which at the time were attributed to alcohol intoxication, in retrospect bear some resemblance to the February 2011 mental breakdown that brought Tyson to the Immanuel Medical Center emergency room, as discussed above. T643-45, 815-21. In other words, while it is true Tyson was more functional when she was sober, there are some observations in the record that, in hindsight, suggest that some of Tyson's impairments were present all along.

And most importantly, we have Shepherd's opinion—the opinion of a medical source who treated Tyson for several months while she was still

- 12 -

abusing alcohol, and then for several more months after she stopped drinking. That is precisely the sort of "detailed, longitudinal picture of [the claimant's] impairment(s)" that, under the Social Security Administration's own regulations, require a treating medical source's opinion to be given controlling weight. *See,* 20 C.F.R. § 404.1527(c)(2); *Anderson,* 696 F.3d at 793. And the other factors that the Social Security Administration has identified as controlling—the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—all weigh in Shepherd's favor. *See* 20 C.F.R. 404.1527(c)(2). Shepherd is the only treating medical source whose opinion is contained in the record, and hers is the only opinion at all in the record that was rendered after Tyson stopped drinking.

It was neither surprising nor unfounded for Branham, Newton, and Blake to believe—before Tyson stopped drinking—that her impairments could largely be attributed to alcohol abuse. Shepherd, had she been asked at the time, might well have said the same. If the record stopped there, the ALJ's conclusion would certainly be supported by substantial evidence. But the record does not stop there, and Shepherd's continued treatment of Tyson put Shepherd in position to assess Tyson's condition before and after she stopped drinking. Shepherd's opinion that Tyson suffered from disabling impairments, even before she stopped drinking, is not inconsistent with the medical evidence, and was entitled to controlling weight. The ALJ erred in concluding otherwise.

Accordingly, the Court will reverse the Commissioner's decision, and remand the case for an award of past-due benefits based upon an onset date of disability of June 24, 2009.

IT IS ORDERED:

1.    The Commissioner's decision is reversed.

2.    This matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for calculation and award of past-due benefits based upon an onset date of disability of June 24, 2009.

3.    A separate judgment will be entered.

Dated this 27th day of March, 2014.

BY THE COURT:

John M. Gerrard
United States District Judge